IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| CHRISTOPHER JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 322-114 |
| ) | |
| WARDEN JERMAINE WHITE; ) | |
| VERONICA STEWART, Deputy Warden ) | |
| Security; SGT. MOORE; SGT. ROBINSON; ) | |
| UNIT MANAGER KAREN THOMAS; and ) | |
| CHIEF COUNSELOR JOHNSON, ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, incarcerated at Telfair State Prison ("TSP") in Helena, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*). Defendant has also filed an emergency motion. (Doc. no. 9.)

I.     SCREENING THE COMPLAINT

   A.     BACKGROUND

Plaintiff names as Defendants: (1) TSP Warden Jermaine White, (2) TSP Deputy Warden of Security Veronica Stewart, (3) TSP Sergeant Moore, (4) TSP Sergeant Robinson, (5) TSP Unit Manager Karen Thomas, and (5) TSP Chief Counselor Johnson. (Doc. no. 1, pp.

1, 4.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On February 25, 2022, Defendant Stewart acted with "judgment and bias towards" Plaintiff after he requested protective custody upon arrival at TSP because he feared gang violence. (Id. at 5.) In response to his request, Defendant Stewart told CERT Officer Wilcox to pepper spray Plaintiff if he refused housing. (Id.) On March 8, 2022, Defendant Stewart entered Plaintiff's cell, had him and his cellmate handcuffed, and explained she believed Defendant must not want to enter the prison's general population because he probably raped a family member of some fellow prisoner. (Doc. no. 1-1, p. 1.) She then said, "I'm going to make sure you die in this cell," before knocking his personal items in his locker to the floor. (Id.) As she left, she told Defendant, "We deal with snitches here in Telfair." (Id.) On April 26, 2022, Plaintiff was told Defendant Stewart offered an orderly cigarettes if he poured a clear liquid in Defendant's food. (Id. at 1.)

Plaintiff is unable to shower because gang members are trying to "pop" out of their cells and stab him. (Id.) On March 2, 2022, Plaintiff wrote a letter to Defendant Thomas requesting protective custody. (Id. at 2.) On March 9, 2022, Plaintiff filed grievances with Warden White, but Defendant Johnson did not process them or did not give Defendant a receipt. (Id. at 2, 6.) On May 17 and May 27, 2022, Defendant Thomas tried to move Plaintiff from segregation to C-Building, which he alleges is "full of gang members." (Id. at 2.) Plaintiff states he is now being kept in administrative segregation, surrounded by gang members, and at high risk of being stabbed or killed. (Id. at 3.) He states Defendants Stewart, Thomas, Moore, Robinson all know of the danger he is in, and still have not moved him to protective custody. (Id.)

On May 10, 2022, Defendant Moore was serving food when Plaintiff received a meal with a strong odor of feces. (Id.) On June 2, 2022, Defendant Moore gave a gang member a sharpened piece of metal. (Id.) One orderly subsequently told Plaintiff that Defendant Moore was going to leave the safety bolt open on the shower so that a gang member could stab him. (Id.) Plaintiff implies this was in retaliation for a grievance. (See id. at 3-4.)

On June 29, 2022, Plaintiff overheard Lieutenant Kellom say to Defendants Robinson and Moore, "I'm going to make sure my boys take all his shit, that motha fucka got to be death struck, who gives a fuck what he write or tell, we are all family here." (Id. at 4.) Defendant Robinson responded, "Snitching motha fucka ain't took a shower in three months, when his ass come out that cell shit gonna get real when them gang perk up, don't worry Sgt. Moore I got that lame ass bitch." (Id.) On July 7, July 18, and July 24, 2022, Plaintiff asked Defendant Robinson to call maintenance because the toilet was backed up. (Id. at 4-5.) After no response, Plaintiff wrote to Defendant White about Defendants Robinson and Johnson. (Id. at 5.) Plaintiff next alleges Defendant Robinson spread rumors Plaintiff was a snitch and circulated a letter Plaintiff wrote giving information to prison investigation staff. (Id.) On August 5, 2022, Defendant Robinson allowed gang members to come into Plaintiff's building during the evening meal, and a gang member brought Plaintiff a regular tray when he needed a vegan tray. (Id.) Defendant Robinson told Plaintiff to take the tray because he knew "something was wrong with it", said to Plaintiff, "Fucking snitches eat shit when I work," and then closed the food trap without allowing Plaintiff to get food. (Id.) Plaintiff insinuates this was done in retaliation for a grievance. (Id.) Plaintiff sent an emergency grievance to Defendant White and the central office on August 8, 2022, but received no response. (Id. at 6.)

3

Plaintiff filed this lawsuit on September 13, 2022, and has since filed several declarations and exhibits in support of his complaint, which contain further factual allegations and requests for relief. (See doc. nos. 17-20.) The Court will only consider these filings and their allegations in so far as Plaintiff directly references them in his complaint. See Saunders v. Duke, 766 F.3d 1262, 1270 (11th Cir. 2014) (noting only "documents attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court"). It is not the Court's duty to independently parse through these filings to discern Plaintiff's claims. See In re Unsolicited Letters to Federal Judges, 120 F. Supp. 2d 1073, 1074 (S.D. Ga. 2000) (explaining court does not have a "license to serve as de facto counsel for a party, or to re-write an otherwise deficient pleading in order to sustain an action. . . .").

B.   **DISCUSSION**

1.   **Legal Standard for Screening**

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff

4

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

2. **Plaintiff fails to State a Supervisory Liability Claim Against Defendant White**

"Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell

v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Defendants liable, Plaintiff must demonstrate that they (1) actually participated in the alleged constitutional violation, or (2) there is a causal connection between the individual's actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

Plaintiff appears to name Defendant White not because of any direct involvement in the events about which he complains, but by virtue of his supervisory position. In his complaint, Plaintiff only involves Defendant White by stating he submitted grievances or other notices of his claims to Defendant White, the warden at TSP. Nowhere does Plaintiff allege Defendant White was present for, or participated in, any alleged constitutional violations.

Therefore, Plaintiff must allege a causal connection between Defendant White and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that

constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff fails to allege facts sufficient to support the necessary causal connection. Plaintiff has not alleged (1) a history of widespread abuse at TSP, (2) an improper custom or policy put in place by Defendant White, or (3) an inference Defendant White directed prison employees to act, or knew they would act, unlawfully. Plaintiff has only alleged Defendant White was notified of Plaintiff's many constitutional claims. Mere knowledge of a civil rights violation after it occurs, and the mere denial or nonresponse to a notice of the violation, cannot form the basis of a valid claim. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (*per curiam*) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Blackerby v. McNeil, No. CV 307-071, 2008 WL 2047814, at *1-2 (S.D. Ga. May 13, 2008) (dismissing claim against prison official who allegedly failed to act in accordance with the plaintiff's wishes concerning information in a grievance and a letter).

In sum, Plaintiff has not shown Defendant White actually participated in any alleged constitutional violations, nor has Plaintiff drawn the necessary causal connection to an alleged

7

violation. Therefore, Plaintiff fails to state a claim upon which relief can be granted against Defendant White, and he should be dismissed from this case.

### 3. Plaintiff Fails to State a Claim Against Defendant Johnson

Plaintiff's only mentions of Defendant Johnson is to say that he is Chief Counselor at TSP and did not process Plaintiff's March 9, 2022 grievances that were intended for Defendant White. Specifically, Defendant Johnson did not provide Plaintiff a receipt for his grievances. Because a prison grievance procedure does not provide a constitutionally protected interest, liability cannot be imposed based on a grievance denial or failure to process a grievance. See Bingham v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (*per curiam*). Thus, any claim Plaintiff may be attempting to raise based on his inability to utilize a grievance procedure fails to state a claim upon which relief may be granted. See id.; see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."). Accordingly, Defendant Johnson should be dismissed.

### 4. Plaintiff Fails to State a Valid Failure to Protect Claim Against Defendant Thomas

A prison official may violate an inmate's Eight Amendment right by acting with 'deliberate indifference' to a substantial risk of serious harm or disregarding a such a risk. Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted). Accordingly, a prison inmate has a constitutional right to be protected from violence and from physical assault by other inmates. Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981). When officials become aware of a

threat to an inmate's health and safety, the Eighth Amendment imposes a duty to provide reasonable protection. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*). However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials." Gullatte, 654 F.2d at 1012. "[T]here must be at least some allegation of a conscious or callous indifference to a prisoner's rights" that would raise the tort to the level of a constitutional violation in order to state a section 1983 cause of action against prison officials for cruel and unusual punishment. Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (citations omitted).

"Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate-on-inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'" Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) (citing Farmer, 511 U.S. at 833-34). To establish an Eighth Amendment claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). These three elements are evaluated in part by an objective standard and in part by a subjective standard. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014).

> As the Eleventh Circuit explained,
>
> When examining the first element—a substantial risk of serious harm—the court uses an objective standard. The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced]

9

>a substantial risk of serious harm. To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted).

Mere negligent failure to protect an inmate from an attack does not justify § 1983 liability. Brown, 894 F.2d at 1537. Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith.").

Defendant only alleges he wrote a letter to Defendant Thomas asking for protective custody, and Defendant Thomas "tried" to move Plaintiff to C-Building, which housed gang members. Plaintiff's brief allegations do not show Defendant Thomas acted with "obduracy and wantonness" in attempting to relocate Plaintiff. The complaint is not even clear whether Plaintiff was actually moved to C-Building. As Plaintiff himself explains, inmate assignment is one of Defendant Thomas's duties, and Plaintiff has alleged no facts showing her ordinary decision to carry out her assignment duties in this manner was done with conscious disregard to some risk. Regardless, Plaintiff has not alleged any resultant harm from whatever risk he faced by any relocation to C-Building. His minimal allegations fail to state a failure to protect claim as to Defendant Thomas.

## II.     EMERGENCY MOTION

On November 10, 2022, Plaintiff filed an emergency motion, (doc. no. 9), and a supporting declaration, (doc. no. 10.) In the emergency motion, Plaintiff claims that on

10

October 11, 2022, Defendant Thomas moved Plaintiff to a cell with a known gang member so that Plaintiff could be assaulted or killed. (Doc. no. 9, p. 1.) Plaintiff is approximately half the height and weight of his cellmate. (Id. at 2.) Plaintiff's cellmate also once pulled out a sharpened piece of metal while making sexual statements to Plaintiff. (Id.) Defendants Stewart, Thomas, Moore, and Robinson have labeled Plaintiff a snitch, which has been communicated to other inmates. (Id.) Plaintiff has previously been stabbed by gang members. (Id.; doc. no. 10, p. 1.) Further, on October 31, 2022, Defendants prevented Plaintiff from getting postal stamps and going to the law library. (Doc. no. 9, p. 2.) Plaintiff is asking for "immediate help" before Defendants "succeed in staging Plaintiff's death." (Id. at 4-5.)

Plaintiff did not title his emergency motion as requesting injunctive relief; however, the Court discerns that Plaintiff is requesting such due to the nature of his letter. A party moving for injunctive relief must show the following: "(1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." All Care Nursing Serv., Inc., 887 F.2d at 1537 (citing United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983)).

Plaintiff has not met his burden of persuasion as to the first two requirements. First, Plaintiff has not shown a likelihood of success on the merits. As explained above, Plaintiff's claims against Defendants White, Thomas, and Johnson fail on the merits. While the Court is

11

allowing service of process of Plaintiff's claims against the remaining Defendants, the Court's decision only finds Plaintiff has met federal pleading standards, not whether Plaintiff's claims are meritorious.

Second, in order to satisfy the irreparable injury requirement, Plaintiff must show the threat of injury is "neither remote nor speculative, but actual and imminent." Northeastern Fla. Chapter of Ass'n of General Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) (citation omitted); see also Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (noting that, in order to obtain injunctive relief, a plaintiff must show "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury."). While Plaintiff does allege in his motion many threats he faces in prison, he fails to directly connect these threats to Defendant Stewart, Moore, and Robinsons' allegedly unconstitutional actions. The harm caused by their conduct is too remote or speculative for the Court to find an irreparable injury.

Regardless, Plaintiff does not even state what he wants the Court to do with an injunction. To the extent Plaintiff is simply asking the Court to order Defendants to follow the law and stop acting unconstitutionally towards him, a follow-the-law injunction is not an appropriate injunctive relief. See Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999) (refusing to issue order which would amount to broad instruction to simply "obey the law"); Davis v. Mar-Jac Poultry, No. 6:18-CV-01433-LSC, 2021 WL 2556012, at *12 (N.D. Ala. Mar. 30, 2021). Therefore, Plaintiff's emergency motion should be **DENIED**.

### III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants White, Thomas, and Johnson be **DISMISSED** for failure to state a claim upon which relief may be granted, and Plaintiff's emergency motion be **DENIED**, (doc. no. 9). By

separate Order, the Court directs service of process on Defendants Stewart, Moore, and Robinson based on Plaintiff's allegations of retaliation and their failure to protect Plaintiff from violence.

SO REPORTED and RECOMMENDED this 12th day of January, 2023, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA