IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-114 |
| | ) | |
| VERONICA STEWART; SGT. MOORE; and SGT. ROBINSON, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, commenced the above-captioned civil rights case *pro se* and is proceeding *in forma pauperis* ("IFP"). Defendants filed a pre-answer motion to dismiss, (doc. no. 31), which Plaintiff opposes, (doc. no. 37). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **DENIED**.

I.     **BACKGROUND**

   A.     **Procedural History**

Plaintiff initially named six defendants, and because he is proceeding IFP, the Court screened the complaint. (See doc. nos. 22.) On February 6, 2023, United States District Judge Dudley H. Bowen, Jr., dismissed three defendants for failure to state a claim upon which relief may be granted but allowed to proceed Plaintiff's retaliation and failure to protect claims against the remaining defendants. (Doc. nos. 24, 28.) Defendants now move to dismiss,

arguing Plaintiff failed to exhaust his administrative remedies prior to filing his complaint. (Doc. no. 31.) Plaintiff responded by alleging the grievance process was unavailable to him at TSP. (See doc. no. 37.)

### B. Complaint Allegations

On February 25, 2022, Plaintiff requested protective custody upon arrival at TSP because he feared gang violence. (Doc. no. 1, p. 5.) In response to his request, Defendant Stewart, TSP Deputy Warden of Security, told CERT Officer Wilcox to pepper spray Plaintiff if he refused housing. (Id.) On March 8, 2022, Defendant Stewart entered Plaintiff's cell, had him and his cellmate handcuffed, and explained she believed Plaintiff must not want to enter the prison's general population because he probably raped a family member of some fellow prisoner. (Doc. no. 1-1, p. 1.) She then said, "I'm going to make sure you die in this cell," before knocking his personal items in his locker to the floor. (Id.) As she left, she told Plaintiff, "We deal with snitches here in Telfair." (Id.) On April 26, 2022, Plaintiff was told Defendant Stewart offered an orderly cigarettes if he poured a clear liquid in Plaintiff's food. (Id. at 1.)

Plaintiff is unable to shower because gang members are trying to "pop" out of their cells and stab him. (Id.) On March 2, 2022, Plaintiff wrote a letter to Unit Manager Karen Thomas requesting protective custody. (Id. at 2.) On March 9, 2022, Plaintiff filed grievances with TSP Warden Jermaine White, but Chief Counselor Johnson did not process them or did not give Plaintiff a receipt. (Id. at 2, 6.) On May 17 and May 27, 2022, Thomas tried to move Plaintiff from segregation to C-Building, which he alleges is "full of gang members." (Id. at 2.) Plaintiff states he is now being kept in administrative segregation, surrounded by gang members, and at high risk of being stabbed or killed. (Id. at 3.) He states Defendants Stewart,

Moore, and Robinson all know of the danger he is in, and still have not moved him to protective custody. (Id.)

On May 10, 2022, Defendant Moore was serving food when Plaintiff received a meal with a strong odor of feces. (Id.) On June 2, 2022, Defendant Moore gave a gang member a sharpened piece of metal. (Id.) One orderly subsequently told Plaintiff that Defendant Moore was going to leave the safety bolt open on the shower so a gang member could stab him. (Id.) Plaintiff implies this was in retaliation for a grievance. (See id. at 3-4.)

On June 29, 2022, Plaintiff overheard Lieutenant Kellom say to Defendants Robinson and Moore, "I'm going to make sure my boys take all his shit, that motha fucka got to be death struck, who gives a fuck what he write or tell, we are all family here." (Id. at 4.) Defendant Robinson responded, "Snitching motha fucka ain't took a shower in three months, when his ass come out that cell shit gonna get real when them gang perk up, don't worry Sgt. Moore I got that lame ass bitch." (Id.) On July 7, July 18, and July 24, 2022, Plaintiff asked Defendant Robinson to call maintenance because the toilet was backed up. (Id. at 4-5.) After no response, Plaintiff wrote to Warden White about Defendants Robinson and Johnson. (Id. at 5.)

Plaintiff next alleges Defendant Robinson spread rumors Plaintiff was a snitch and circulated a letter Plaintiff wrote giving information to prison investigation. (Id.) On August 5, 2022, Defendant Robinson allowed gang members to come into Plaintiff's building during the evening meal, and a gang member brought Plaintiff a regular tray when he needed a vegan tray. (Id.) Defendant Robinson told Plaintiff to take the tray because he knew "something was wrong with it," said to Plaintiff, "Fucking snitches eat shit when I work," and then closed the food trap without allowing Plaintiff to get food. (Id.) Plaintiff insinuates this was done in

3

retaliation for a grievance. (Id.) Plaintiff sent an emergency grievance to Warden White and the central office on August 8, 2022, but received no response. (Id. at 6.)

    C.    **Plaintiff's Relevant Grievance History**

In support of the motion to dismiss, Defendants produced the affidavit of Anntionette Johnson, Chief Counselor at TSP and formerly a defendant in this case. (See doc. no. 31-2, Johnson Decl. ¶¶ 2, 12.) Ms. Johnson is familiar with the Georgia Department of Corrections ("GDC") grievance process, and her responsibilities include acting as the Grievance Coordinator to ensure compliance with the applicable grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. ¶¶ 2, 3.)

Ms. Johnson identified ten grievances filed by Plaintiff at other state prisons, all before October 24, 2019, and two grievances filed at TSP, one on October 26, 2022, and the other on December 5, 2022. (Id. ¶ 11 & Ex. 2.) There is no record of Plaintiff filing a grievance at TSP before submission of his complaint on September 13, 2022, let alone a grievance related to his complaint allegations. (See id. ¶ 12.)

In his complaint and response to the motion to dismiss, Plaintiff alleges he attempted to submit grievances to Ms. Johnson on March 9, 2022, but the grievances were not processed and he did not receive a receipt. (Doc. no. 1, p. 3; doc. no. 1-1, p. 6; see generally doc. no. 37.) Plaintiff attaches to his complaint a handwritten copy of one of the grievances he attempted to submit to Ms. Johnson that day. (See doc. no. 1-1, p. 10-11.) He also attaches a handwritten copy of a grievance he attempted to file on May 9, 2022, (id. at 20-21), as well as several letters and statements to prison staff and outside legal aid. (id. at 12-17, 23-25, 28-36, 38-42, 44-58, 63-65). Two of these documents are titled "RE: Emergency Grievance" and

were purportedly submitted on August 5, 2022.  (Id. at 39-40, 63.)  The bulk of these documents are dated and stamped by a notary at or near the same date Plaintiff signed them.

## II.     DISCUSSION

### A.     The Legal Framework for Determining Exhaustion

Where, as here, a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that the plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted.  Id.  Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In the Eleventh Circuit, "brought" as used in this section of the PLRA means "the filing or commencement of a lawsuit, not . . . its continuation." Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000) (*en banc*); see also Goebert v. Lee Cnty., 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the statute sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative

remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play": (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation." Ross v. Blake, 578 U.S. 632, 643-44 (2016).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement. Johnson, 418 F.3d at 1159.

**B.     The Administrative Grievance Procedure**

The administrative grievance procedure applicable to this case is GDC's SOP Policy Number ("PN") 227.02, which became effective May 10, 2019. (Johnson Decl. ¶ 3 & Ex. 1.) The grievance procedure has two steps: (1) Original Grievance, and (2) Central Office Appeal. PN 227.02 § IV(C). The administrative remedies procedure commences with filing an Original Grievance via the Kiosk/Tablet or with a counselor. Id. § IV(C)(1)(c) & (d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of

the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a Central Office Appeal. Id. §§ IV(C)(1)(e)(v) & (C)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a Central Office Appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § (C)(2)(e). If the Central Office Appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. Id. § IV(C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second Central Office Appeal. Id.

An emergency grievance is one that requires immediate action or relief through the grievance process, such as a threat to health, safety, or welfare. Id. § III(F). If a prisoner files an emergency grievance, a duty officer must immediately review it and determine whether it

fits the definition of an emergency grievance. If the grievance is an emergency, the duty officer must provide an initial response within forty-eight hours. Id. § IV(D)(1-2). The prisoner must then be provided a written response within five days. Id. If the grievance is not deemed an emergency, then the prisoner must be so notified within five days and must file a new, non-emergency grievance regarding the issue within ten days that that notification. Id. § IV(D)(3).

Records of all grievances and emergency grievances are to be maintained in a central database. Id. §§ IV(C)(1)(f)(vii) & (D)(1); (Johnson Decl. ¶ 11, 13.)

C.   **Plaintiff's Efforts to Exhaust**

While Defendants have shown the prison has no record of grievances filed by Plaintiff before submission of his compliant or related to his claims,[1] Plaintiff's allegations that the grievance process was unavailable to him are sufficient to get him past the first step of Turner.

Under the second Turner step, the Court must make specific findings to resolve the factual disputes regarding exhaustion and availability, and a defendant bears the burden to prove Plaintiff did not exhaust administrative remedies. See Maldonado v. Baker Cnty. Sheriff's Off., 23 F.4th 1299, 1307-08 (11th Cir. 2022). In doing so, a defendant must show administrative remedies were "generally available." Wright v. Georgia Dep't of Corr., 820 F. App'x 841, 845 (11th Cir. 2020) (*per curiam*), *cert. denied*, 141 S. Ct. 1416 (2021). Once a defendant has met his burden showing available remedies and failure to exhaust, the burden shifts to Plaintiff to show the remedies outlined by defendant were subjectively and objectively unavailable *to him*. Geter v. Baldwin State Prison, 974 F.3d 1348, 1356 (11th Cir. 2020); Wright, 820 F. App'x at 845.

---

[1]To the extent Plaintiff argues his October 27th grievance regarding use of a tablet constitutes exhaustion of his complaint allegations, he is mistaken because this grievance neither relates to his claims nor was exhausted before he filed this lawsuit. (See doc. no. 37, pp. 3-16.)

9

Defendants have shown, and it is generally undisputed, administrative remedies were generally available at TSP during the time in question. Plaintiff does not contest the existence or his awareness of the grievance procedure, and he successfully submitted an unrelated grievance after submission of his complaint. (See doc. no. 37, pp. 3-4, 7-16); see Wright, 820 F. App'x at 845 (defining "generally available" was whether a grievance procedure exists); Gomez v. Jackson, No. 1:18-CV-00963, 2020 WL 4048061, at *10 (N.D. Ga. July 20, 2020) (finding Plaintiff's concession satisfies Defendant's burden to show remedies were generally available). Therefore, it is Plaintiff's burden to provide facts showing the grievance process was unavailable to him in this instance. See Geter, 974 F.3d at 1348; Walker v. Roberson, No. CV 308-016, 2009 WL 2338035, at *11 (S.D. Ga. July 27, 2009) ("Plaintiff must point to specific facts showing that prison staff inhibited him from utilizing the grievance process.").

Plaintiff complains his attempts to utilize the grievance process were unsuccessful because Ms. Johnson did not accept or process his grievances, meaning his grievances were neither logged nor considered. Throughout his complaint and in his response to the motion to dismiss, he also alleges Defendants and prison staff have retaliated against him for utilizing the grievance process, though he provides little detail on the basis of his suspicions other than his general complaint allegations, which the Court has found state a claim for retaliation. (See doc. no. 24; doc. no. 1-1, pp. 3-5; doc. no. 37, pp. 3-4, 63.) Plaintiff's complaint references multiple attached exhibits documenting his rejected attempts to submit grievances on March 9 and May 9, 2022, and an emergency grievance on August 5, 2022. (Doc. no. 1-1, pp. 10-11, 20-21, 39-40, 63.) He has also provided copies of multiple letters he wrote complaining about prison staffs' failure to process his grievances. (See id. at 12-18, 24, 28, 41, 44, 48.)

10

Defendants present no evidence concerning whether Plaintiff actually attempted to submit grievances or why any attempts were unsuccessful. The grievance counselor's declaration only states "any grievance received by TSP personnel must be logged into a central database . . . ." (Johnson Decl. ¶ 11.) Then, Defendants simply rely on the database, which only shows what Plaintiff already alleges: prison staff have not logged any grievances from Plaintiff related to his claims. See Conner v Allen, No. 6:17-CV-10, 2020 WL 2104943, at *7 (S.D. Ga. May 1, 2020) ("The fact that the prison may lack record of the appeal is consistent with—not contrary to—Plaintiff's claim that he submitted the appeal, but it was not processed."), *adopted by* 2020 WL 3163292 (S.D. Ga. June 12, 2020).

Plaintiff's factual allegations that prison staff have repeatedly refused to accept his grievances are consistent, well-documented, and thus credible. Defendants' general allegations in response do little to dispute Plaintiff's specific claims. Plaintiff's allegations, paired with his less detailed but consistent claim prison staff have taken retaliatory action against him for his attempts, satisfy his burden to show prison officials refused to follow established grievance policy and also prevented filing grievances through "machination, misrepresentation or intimidation." Ross, 578 U.S. at 644; see White v. Staten, 672 F. App'x 919, 924 (11th Cir. 2016) (*per curiam*) (vacating District Court's non-exhaustion finding to consider prisoner's claim he attempted to submit a grievance, but it was not processed or recorded); cf. Carswell v. Conley, No. 5:17-CV-00203-TES, 2019 WL 2016539, at *3 (M.D. Ga. May 7, 2019) (finding prisoner failed to show unavailability when he did not provide receipts of attempted but unrecorded grievances); see also Turner, 541 F.3d at 1085 (holding threats of substantial retaliation against prisoner for pursuing grievances can make administrative remedies unavailable); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) ("We

believe that a remedy that prison officials prevent a prisoner from utilizing is not an available remedy under § 1997e(a), and that [plaintiff's] allegations raise an inference that he was prevented from utilizing the prison's administrative remedies." (quotations omitted)).

Plaintiff has credibly presented facts showing administrative remedies were unavailable to him here, and a prisoner "is not required to exhaust unavailable administrative remedies . . . prior to filing suit." Hasuan v. Watson, No. 2:20-CV-121, 2021 WL 6497214, at *7 (S.D. Ga. Dec. 20, 2021), *adopted by* 2022 WL 130743 (S.D. Ga. Jan. 13, 2022). The motion to dismiss for failure to exhaust should be denied.

### III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **DENIED**.  (Doc. no. 31.)

SO ORDERED this 30th day of March, 2023, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA