IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| CHRISTOPHER JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 322-114 |
| | ) |
| VERONICA STEWART; SGT. MOORE; | ) |
| and SGT. ROBINSON, | ) |
| | ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, currently incarcerated at Smith State Prison in Glennville, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case filed pursuant to 42 U.SC. § 1983 concerning events alleged to have occurred at Telfair State Prison ("TSP") in Helena, Georgia. Defendants move for summary judgment. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**, (doc. no. 56), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

**I.     PROCEDURAL BACKGROUND**

At screening, the Court dismissed all claims and defendants except retaliation and failure to protect claims against Defendants Stewart, Moore, and Robinson. (See doc. nos. 1, 22, 24, 28.) Consistent with the case deadlines, Defendants filed a motion for summary judgment on November 13, 2023. (Doc. no. 56.) At that time, the Clerk of Court issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or

other materials in opposition, and the consequences of failing to comply with the requirements for responding.  (See doc. no. 57.)  Plaintiff requested an extension of time to respond, which the Court granted. (Doc. nos. 58-59.)  In granting Plaintiff's request, the Court again explained the rights and requirements associated with responding to Defendants' motion.  (Doc. no. 59.)  Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.

In accordance with Local Rule 56.1, Defendants submitted a Statement of Material Facts ("SMF") in support of their summary judgment motion.  (Doc. no. 56-3.)  Although Plaintiff responded in opposition to Defendants' summary judgment motion, these filings do not respond to each fact in Defendants' SMF and consist of conclusory allegations, most of which are inadmissible evidence.  See Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (requiring consideration of only admissible evidence when ruling on motions for summary judgment); see also Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (finding summary judgment appropriate where inmate produced nothing beyond "his own conclusory allegations" challenging actions of defendant); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment.").  Regardless, the Court will consider, where appropriate, Plaintiff's responses.

The Court deems admitted all portions of Defendants' SMF having evidentiary support in, and not otherwise contradicted by, the record and which are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56.[1]  See Loc. R. 56.1; Fed.

---

[1] Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must

2

R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (same).

However, this does not automatically entitle Defendants to summary judgment because as the movant, Defendants continue to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Moreover, the Court is mindful it "must construe the facts and draw all inferences in the light most favorable to the nonmoving party and 'when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's *version*.'" Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006) (quoting Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005)). Thus, the Court will review the record, including Plaintiff's sworn deposition testimony, and any factually supported opposition to the SMF, "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303; see also Scott v. Harris, 550 U.S. 372, 380 (2007).

## II. FACTUAL BACKGROUND

Prior to his arrival at TSP, Plaintiff was incarcerated at Calhoun State Prison, where he was not assigned a cellmate. (Jackson Dep., pp. 132-33.) Plaintiff understood this to be a decision by the Calhoun State Warden that "special rules" applied and Plaintiff should not be

---

be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(1) & (4).

3

housed in general population due to the nature of the human trafficking crimes for which he was convicted. (Id.) When Plaintiff arrived at TSP in February 2022, he requested protective custody because he feared gang violence. (SMF ¶ 4.) Plaintiff claims that in response Defendant Stewart, TSP Deputy Warden of Security, told CERT Officer Wilcox to pepper spray Plaintiff if he refused housing. (Id. ¶ 5.) Plaintiff was assigned to administrative segregation, which is a protected unit separate from the general population. (Id. ¶¶ 6-8.) Inmates in administrative segregation may be assigned cellmates. (See id. ¶ 12.)

During his first seven days at TSP, Plaintiff's cellmate was Larry Bryant. (Id. ¶ 13.) Bryant assaulted Plaintiff. (Id. ¶ 12.) Plaintiff did not seek medical treatment for the resulting injuries, nor does he have any continuing medical problems from the assault. (Id. ¶¶ 10-11.) After the assault, Plaintiff was moved to a different cell. (Id. ¶¶ 13-14.) Plaintiff does not believe Defendant Moore "actually knew at the time" Inmate Bryant was likely to attack Plaintiff, but she "could have" known. (Jackson Dep., p. 131.)

Plaintiff alleges Defendants orchestrated a series of retaliatory acts against him, both before and after the filing of this lawsuit, because of their disdain for human trafficking and their disappointment with Plaintiff's decision to file suit. (Id. at 39; SMF ¶ 21.) On April 26, 2022, an unidentified person told Plaintiff that Defendant Stewart offered an orderly cigarettes if he poured a clear liquid in Plaintiff's food. (SMF ¶ 26.) Plaintiff did not eat the food he believed to be contaminated with the clear liquid. (Id. ¶ 27.) On May 10, 2022, Defendant Moore was on duty when Plaintiff received a meal with a strong odor of feces and urine. (Id. ¶ 28.)

Plaintiff also alleges that, for a period of time at TSP, every meal he was served was contaminated with urine or feces. (Jackson Dep., pp. 56-58.) Plaintiff does not allege

Defendants personally contaminated his food, but alleges they allowed inmates to do so. (SMF ¶¶ 31-32; see also Jackson Dep., pp. 45-48, 55-58, 80-81, 84-90.)  Plaintiff also contends Defendants allowed inmates to serve Plaintiff standard meals when he was supposed to receive vegan meals. (SMF ¶ 30; Jackson Dep., p. 45.)  Plaintiff did not eat any of the food he believed to be contaminated, and instead ate food he purchased from the commissary. (SMF ¶ 29; Jackson Dep., p. 58.)  Plaintiff claims his cellmate ate the contaminated food and became sick as a result. (Jackson Dep., pp. 59-61.)

Plaintiff also alleges retaliatory acts related to showering at TSP.  Plaintiff claims on June 2, 2022, an orderly told him Defendant Moore was going to leave the safety bolt open on the shower so that a gang member could stab him. (SMF ¶ 33; Jackson Dep., pp. 96, 98.)  From then on, Plaintiff stopped showering when Defendant Moore oversaw the showers because he did not want to "walk into a trap." (Jackson Dep., p. 102.)  Plaintiff also declined to shower when Defendant Robinson was the overseer because he did not trust her. (SMF ¶ 35.)

In July 2022, Plaintiff experienced plumbing issues in his cell and asked Defendant Robinson to report the problem to maintenance. (Id. ¶ 36.)  Plaintiff claims it took too long for the plumbing to be fixed and Defendant Robinson provided various "excuses" for the delay. (SMF ¶ 36; Jackson Dep., p. 104.)  Plaintiff believes the delay was an act of retaliation by Defendant Robinson in response to Plaintiff "filing paperwork." (SMF ¶ 37; Jackson Dep., pp. 98, 104.)

In October 2022, after the filing of this lawsuit, Plaintiff was relocated to D building at TSP, where he continued to be housed in administrative segregation. (SMF ¶¶ 18-19.)  Plaintiff does not recall the name of his cellmate while he was housed in D building, but alleges

this cellmate assaulted him on two occasions. (Id. ¶ 19.) Plaintiff believes his relocation to D building was retaliatory and believes TSP official Karen Thomas was responsible for the decision to relocate Plaintiff. (Id. ¶¶ 20, 24; Jackson Dep., p. 102, 109.) Plaintiff did not seek medical treatment for the injuries sustained during these assaults, nor does he have any medical problems caused by the assaults. (SMF ¶¶ 10-11.)

Plaintiff alleges he attempted to submit grievances regarding these incidents to Anntoinette Johnson, Chief Counselor and Grievance Coordinator at TSP, but she did not process the grievances or give him a receipt. (SMF ¶ 38.) Plaintiff's filings include various handwritten copies of grievances he claims he attempted to file, but TSP has no record of. (See SMF ¶¶ 39-41, 49-51.) Neither TSP nor the Central Office, which processes grievance appeals, has any record of Plaintiff submitting a grievance between the time he arrived at TSP and the filing of this lawsuit. (SMF ¶ 51.)

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has

the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Defendants Are Entitled to Summary Judgment on Plaintiff's First Amendment Retaliation Claim

Under the First Amendment, prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). To prevail on a retaliation claim, an inmate must show that (1) he engaged in speech or conduct protected by the Constitution; (2) the defendant took action of such a nature that it would likely deter a person of ordinary firmness from exercising that right; and (3) a causal connection

exists between the protected activity and the retaliatory action. O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011); Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008); Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005). In general, "[a] prisoner's filing of a grievance concerning his conditions of his imprisonment is protected speech under the First Amendment." Thomas v. Lawrence, 421 F. App'x 926, 928 (11th Cir. 2011) (*per curiam*) (citing Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008)).

"The causation prong 'asks whether the defendants were subjectively motivated' by the plaintiff's protected speech." Moulds v. Bullard, 345 F. App'x 387, 393 (11th Cir. 2009) (*per curiam*) (quoting Smith, 532 F.3d at 1278). Plaintiff bears the burden of showing subjective motivation, and

> once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on his motion for judgment as a matter of law or prior to trial on summary judgment.

Smith, 532 F.3d at 1278 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)). Further, "[t]o defeat a summary judgment motion, a plaintiff need not adduce clear and convincing evidence of improper motive, but he must produce evidence from which a jury could find by a preponderance of the evidence, that retaliation was the but-for cause of the challenged action." Rager v. Augustine, No. 515-CV-35, 2017 WL 6627416, at *7 (N.D. Fla. Nov. 8, 2017) (citing Crawford-El v. Britton, 523 U.S. 574, 590-95, 600 (1998)), *adopted by* 2017 WL 6627784 (N.D. Fla. Dec. 28, 2017), *aff'd*, 760 F. App'x 947 (11th Cir. 2019); see Allen v. Sec'y, Fla. Dep't of Corr., 578 F. App'x 836, 840 (11th Cir. 2014) (*per curiam*) ("For the third element, a prisoner must allege facts showing that the alleged retaliatory conduct would not have occurred but for the retaliatory motive."); Benton v. Rousseau, 940 F. Supp.

2d 1370, 1377 (M.D. Fla. 2013) (utilizing but-for test on retaliation claim at summary judgment).

As a preliminary matter, Plaintiff's claims that Defendants retaliated against him due to the nature of the crimes for which he was convicted fail on the first element. "The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989). Here, Plaintiff alleges merely that Defendants took actions against him because they were aware Plaintiff was convicted for human trafficking. Neither engaging in human trafficking, nor the existence of a criminal conviction, constitute protected expression, so these cannot serve as the basis for the first element of a retaliation claim. However, because Plaintiff also suggests Defendants' actions were motivated by his attempts to file grievances and the filing of this lawsuit, which do constitute protected speech, the Court will consider whether there is an issue of material fact concerning Defendants' alleged retaliation against Plaintiff for those forms of protected speech.

Assuming *arguendo* Plaintiff could satisfy the first two elements of a retaliation claim,[2] Plaintiff's claim fails on causation. Plaintiff produces no evidence other than his own conclusory allegations that Defendants actions—to the extent he even connects the events he complains of to Defendants—were motivated by his attempts to file grievances or the filing of this lawsuit. Therefore, Plaintiff fails to meet his burden as he "[has] not demonstrated that a rational trier of fact could have found a causal connection between the two events." Moulds, 345 F. App'x at 393; see Harris, 65 F.3d at 916 (affirming summary judgment for defendant

---

[2] The parties dispute whether Plaintiff engaged in protected activity by making attempts to submit grievances between his arrival at TSP and the filing of this case. Because the Court recommends granting summary judgment on the merits of Plaintiff's claims, it need not reach the issue of exhaustion and assumes Plaintiff attempted to file grievances concerning conditions at TSP for the purpose of this analysis.

because plaintiff "produced nothing beyond his own conclusory allegations suggesting that [defendant's] actions . . . were motivated by retaliatory animus"); Gayle v. Daughtry, No. CA120740, 2013 WL 4046467, at *6 (S.D. Ala. Aug. 8, 2013) (granting summary judgment to defendant because plaintiff failed to establish a causal relationship by relying on his own conclusory allegations); see also Horsman v. Bentley, No. 211-CV-769, 2014 WL 6673847, at *33 (M.D. Ala. Nov. 24, 2014) (The record before the court . . . provides no basis on which a reasonable fact finder could fairly infer the requisite subjective motivating factor.").

Regarding his allegations about contamination of Plaintiff's food, threats about possible violence in the showers, the delay in repairing the plumbing in Plaintiff's cell, and Plaintiff's transfer to D building, Plaintiff provides no evidence other than his own conclusory allegations that these events were motivated by retaliatory animus. In fact, Plaintiff's conclusory allegations themselves are speculative, only vaguely alleging Defendants had anything to do with the actions he complains of based on his feelings about his circumstances at TSP. (See, e.g., Jackson Dep., p. 102 ("I don't think that the situation just . . . magically appeared. I feel that they all -- all three [Defendants] are completely responsible for everything that was taking place.").) Moreover, Plaintiff admits Defendants were not responsible for at least one of the events Plaintiff claims were retaliatory. (See Jackson Dep., p. 102 (stating "I think Karen Thomas did that personally" regarding Plaintiff's assignment to D building).) Plaintiff provides no admissible evidence connecting the events at issue to retaliatory intent by Defendants.

As such, no reasonable juror would find Defendants contaminated Plaintiff's food, coordinated violence against Plaintiff in the showers, caused a delay in repairing the plumbing in Plaintiff's cell, or transferred Plaintiff to D building because of Plaintiff's attempts at filing

grievances or his filing of the instant suit. "This is not a sequence of events from which one could, without more, plausibly infer a retaliatory motive." Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 911 (11th Cir. 2010) (*per curiam*). No reasonable juror would disagree based on the undisputed facts, and Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claims.

### C. Defendants Are Entitled to Summary Judgment on Plaintiff's Eighth Amendment Failure to Protect Claim

#### 1. Legal Standard for an Eighth Amendment Failure to Protect Claim

A prisoner has a constitutional right to be protected from violence and from physical assault by other inmates. Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984) (*per curiam*). However, because "a risk of harm to some degree always exists by the nature of its being a [prison]," not every condition rises to the level of an Eighth Amendment violation. Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga., 400 F.3d 1313, 1323 (11th Cir. 2005); see also Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981) ("This does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials."); Terry v. Bailey, 376 F. App'x 894, 895 (11th Cir. 2010) (*per curiam*) ("Although 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners,' not every instance of inmate on inmate violence 'translates into constitutional liability for prison officials responsible for the victim's safety.'" (citing Farmer v. Brennan, 511 U.S. 825, 833-34 (1994))). "An excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where

violence and terror reign is actionable." Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014).

"Merely negligent failure to protect an inmate from attack does not justify liability under § 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (*per curiam*) (citation omitted). Stated otherwise, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Farmer, 511 U.S. at 835-39; see also Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (requiring a plaintiff to show "more than mere negligence," and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith.").

In particular, a prisoner seeking to impose liability for an Eighth Amendment claim must establish the existence of "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). These three elements are evaluated in part by an objective standard and in part by a subjective standard. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014).

As the Eleventh Circuit explained,

> When examining the first element—a substantial risk of serious harm—the court uses an objective standard. The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm. To satisfy the objective component, a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted). The deliberate indifference prong of the test requires proof of "(1) subjective knowledge of a risk of serious harm; and (2) disregard of that

12

risk (3) by conduct that is more than mere negligence." Dang ex rel. Dang v. Sheriff, Seminole Cnty., Fla., 871 F.3d 1272, 1279 (11th Cir. 2017) (citation omitted); see also Lane, 835 F.3d at 1308 ("[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (citing Farmer, 511 U.S. at 837)).

> **2.  Defendants Are Entitled to Summary Judgment Because Plaintiff Cannot Establish the Three Elements Necessary to Impose Liability for an Eighth Amendment Claim.**

Applying an objective standard to the first prong of Plaintiff's deliberate indifference claim, the undisputed facts show Plaintiff was not exposed to a substantial risk of serious harm. See Lane, 835 F.3d at 1307; Caldwell, 748 F.3d at 1099. A plaintiff may demonstrate a substantial risk of serious harm either by alleging an "individualized risk based on specific threats" or an "environmental risk based on dangerous prison conditions." See Bugge v. Roberts, 430 F. App'x 753, 758-59 (11th Cir. 2011) (*per curiam*). For the latter, an inmate plaintiff must show they are confined "in a prison where violence and terror reign." Harrison, 746 F.3d at 1299 (11th Cir. 2014) (quoting Purcell, 400 F.3d at 1320). Plaintiff alleges he was attacked by his first cellmate at TSP, Inmate Bryant, once before he was reassigned to a new cellmate. Though Plaintiff cites gang violence as the source of his concerns about safety, (SMF ¶ 4), the conditions at TSP as described by Plaintiff were not representative of a "prison where violence and terror reign." Harrison, 746 F.3d at 1299. Moreover, Plaintiff provides no evidence of individualized risks based on specific threats by Inmate Bryant or his cellmate in D building. In fact, Plaintiff claims only that he generally informed TSP officials of his desire to not have a roommate, and concedes Inmate Bryant attacked him with no prior threat to

13

Plaintiff's safety.  (See Jackson Dep., p. 131 ("[Bryant] didn't even say anything because he just swung at me, just out of the blindside just swung at me.").  Likewise, Plaintiff makes no allegation regarding threats by his roommate in D building prior to the alleged assaults there.  Neither vague concerns about safety in the prison setting, nor an unpredictable attack with no prior threat are sufficient to establish a substantial risk of serious harm to Plaintiff.  See Marbury v. Warden, 936 F.3d 1227, 1237 (11th Cir. 2019); Est. of Owens v. GEO Grp., Inc., 660 F. App'x 763, 772 (11th Cir. 2016) (*per curiam*).

As to the second prong, the undisputed facts show Defendants neither actually (subjectively) knew Plaintiff faced a substantial risk of serious harm, nor disregarded that known risk by failing to respond to it in an (objectively) reasonable manner.  See Lane, 835 F.3d at 1307; Caldwell, 748 F.3d at 1099.  As discussed above, Inmate Bryant's attack came with no advance warning.  Plaintiff merely alleges Defendant Moore "could have" known Inmate Bryant was likely to attack Plaintiff but provides no evidence to support this theory and additionally states "I don't think she actually knew at the time." (Jackson Dep., p. 131).  Thus, Plaintiff fails to establish Defendants subjectively knew Innate Bryant posed a substantial risk to Plaintiff's safety.

As to the third prong of an Eighth Amendment claim, the record shows Plaintiff cannot establish causation between any deliberate indifference and Plaintiff's injuries resulting from the alleged attacks by Inmate Bryant or Plaintiff's cellmate in D building.  See Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016).  Causation can be shown by personal participation in the alleged constitutional violation.  Goebert v. Lee Cty., 510 F.3d 1312, 1327 (11th Cir. 2007) (citation omitted).  Regarding Inmate Bryant's attack, Plaintiff produces nothing but his own conclusory allegation that Defendant Moore was involved in the chain of

14

events that resulted in Inmate Bryant attacking Plaintiff, and makes no allegations Defendants Stewart and Robinson were involved at all. (See Jackson Dep., p. 129.) As for the alleged attacks by Plaintiff's cellmate in D building, there no evidence to show Defendants were responsible for Plaintiff's relocation to or assignment in D building, and Plaintiff himself alleges TSP Official Karen Thomas was solely responsible for this choice. (See Jackson Dep., p. 131.) Thus, Plaintiff has failed to provide sufficient evidence for any reasonable juror to find for Plaintiff on the causation prong of his Eighth Amendment claim.

In sum, Plaintiff cannot satisfy any of the three elements of his Eighth Amendment failure to protect claim and Defendants are entitled to summary judgment.

### D.     Defendants' Arguments Regarding Exhaustion, Immunity, and Injunctive Relief Are Moot

Defendants also argue Plaintiff's claims should be dismissed for failure to exhaust administrative remedies, that Defendants are entitled to qualified immunity, and Plaintiff's request for injunctive relief is moot because he is no longer imprisoned at TSP. (Doc. no. 56, pp. 6-10, 17-20.) Because Defendants are entitled to summary judgment on the substantive merits of Plaintiff's claims as discussed *supra*, the issues of exhaustion, immunity, and injunctive relief are ultimately moot, and the Court will not address them. See Martinez v. Burns, 459 F. App'x 849, 851 n.2 (11th Cir. 2012) (*per curiam*); Burgest v. United States, 316 F. App'x 955, 957 (11th Cir. 2009) (*per curiam*); Puckett v. Macomson, No. CV 119-220, 2021 WL 1896982, at *8 (S.D. Ga. Apr. 13, 2021), *adopted by*, 2021 WL 1896975 (S.D. Ga. May 11, 2021).

### IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**

15

Defendants' motion for summary judgment be **GRANTED**, (doc. no. 56), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 29th day of February, 2024, at Augusta, Georgia.

```
_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA
```